J-S14020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INT. OF: T.C., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: L.F. | |
| | No. 1447 MDA 2016 |

Appeal from the Order Entered August 18, 2016
In the Court of Common Pleas of Cumberland County
Juvenile Division at No(s): CP-21-DP-0000202-2012

BEFORE:  GANTMAN, P.J., SHOGAN and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 03, 2017**

L.F. ("Father") appeals from the order entered on August 18, 2016, continuing the placement of his minor daughter, T.C. ("Child"), in foster care upon a finding of aggravated circumstances and directing that no reunification efforts should be made.  Father also challenges the trial court's order entered on September 2, 2016, clarifying that he would not be permitted visitation with Child.  We affirm.

Child was born in December of 2012 to Father and T.G. ("Mother").[1] Cumberland County Children and Youth Services ("CYS") first became involved with Child immediately after her birth, due to concerns that Mother

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  The trial court terminated Mother's parental rights on May 6, 2016, and she is not involved with this appeal.  N.T., 7/22/16, at 5.

tested positive for marijuana and was homeless. Master's Recommendation for Adjudication and Disposition–Child Dependent, 1/7/13, at 1 (Findings of Fact). CYS filed a dependency petition with respect to Child on December 17, 2012, and the trial court adjudicated Child dependent by order entered January 7, 2013. Mother complied with Child's permanency plan, and the court terminated Child's dependency by order entered October 25, 2013. Father was not involved in Child's life during this time, and Mother refused to provide CYS with Father's identity. **Id.**

The trial court removed Child from Mother's care for a second time on January 9, 2015, after Mother's paramour, J.G., overdosed on heroin in the presence of Child and her sister, C.G. Master's Recommendation for Adjudication and Disposition–Child Dependent, 1/16/15, at 1 (Findings of Fact). Following these events, Mother and J.G. were incarcerated and charged with endangering the welfare of children. **Id.** CYS filed a dependency petition on January 13, 2015, and the court adjudicated Child dependent by order entered January 16, 2015.

Mother first provided CYS with the name of a possible father for Child in approximately June of 2015. Master's Recommendation–Permanency Review, 6/29/15, at 1 (Permanency Plan-Compliance). However, Mother misidentified Child's father as a man by the name of T.B. CYS did not discover Father's true identity until May of 2016. N.T., 7/22/16, at 12. Specifically, CYS contacted the domestic relations office regarding T.B., only

to discover that Father had already been confirmed as Child's father through genetic testing in April of 2013. *Id.* at 6.

On June 30, 2016, CYS filed a motion for finding of aggravated circumstances on the basis that Father failed to maintain contact with Child for six months. The trial court conducted an aggravated-circumstances hearing on July 22, 2016. Following the hearing, on July 25, 2016, the court entered an order directing that no visits should occur between Father and Child because visits posed a grave threat of harm. The court indicated that it would address this issue again in its aggravated-circumstances order.

On August 18, 2016, the court entered an order finding aggravated circumstances as to Father and directing that no efforts should be made to reunify him with Child. However, the court failed to address visitation. CYS filed a motion on September 1, 2016, in which it asked the court to clarify whether Father should receive visits with Child. The court entered an order on September 2, 2016, explaining that Father should not receive visits. Father timely filed a notice of appeal on September 6, 2016, along with a concise statement of errors complained of on appeal.

Father now raises four issues for our review:

1. Whether the [trial court] erred as a matter of law and abused its discretion in finding aggravated circumstances when [F]ather was ready, willing and able to parent the child and provide for her needs?

2. Whether the [trial court] erred as a matter of law in finding that aggravated circumstances exist by determining that Father failed to maintain substantial and continuing contact with the

child for six months when the evidence presented at trial supported that Father had made attempts to have contact with the child?

3. Whether the [trial court] erred as a matter of law in finding that aggravated circumstances existed despite that [*sic*] fact that Father was not notified by [CYS] that the child was dependent until June of 2016, although the child had been found dependent and in placement for over a year and Father's paternity and whereabouts should have been easily ascertained as he had participated in a paternity test for the Cumberland County Domestic Relations Office?

4. Whether the [trial court] erred as a matter of law and abused its discretion in denying Father visitation of the child despite Father's requests?

Father's Brief at 4.[2]

We consider Father's claims mindful of our well-settled standard of review:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (quoting *In re R.J.T.,* 9 A.3d 1179, 1190 (Pa. 2010)).

Dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301–6375. The Juvenile Act provides that a child may be adjudicated dependent if he or she meets the requirements of one of ten definitions

_____

[2] Father's statement of questions involved does not accurately represent the arguments presented in his brief. We detail the actual substance of Father's arguments, *infra*.

listed at 42 Pa.C.S. § 6302. If a juvenile court determines that a child is dependent, and aggravated circumstances have been alleged by either the county agency or by the child's attorney, the court must also determine if aggravated circumstances exist. 42 Pa.C.S. § 6341(c.1). If the court determines that aggravated circumstances do exist, the court must then consider whether reasonable efforts should be made to reunify the child with his or her parent. *Id.* Following a finding of aggravated circumstances, a court may end reasonable efforts at its discretion. *In re L.V.*, 127 A.3d 831, 839 (Pa. Super. 2015) (citation omitted).

The Juvenile Act defines aggravated circumstances, in relevant part, as follows:

> **"Aggravated circumstances."** Any of the following circumstances:
>
> (1) The child is in the custody of a county agency and either:
>
> &ast; &ast; &ast;
>
> > (ii) the identity or whereabouts of the parents is known and the parents have failed to maintain substantial and continuing contact with the child for a period of six months.

42 Pa.C.S. § 6302(1)(ii).

In applying section 6302 to the facts of this case, we stress that parents have an affirmative duty to maintain a place of importance in their children's lives:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order

- 5 -

to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted). "This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child." *Id.* (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003)).

In his first issue on appeal, Father argues that the trial court erred by finding aggravated circumstances because CYS failed to provide him with reasonable reunification efforts. Father's Brief at 10-11. Father waived this issue by failing to include it in his concise statement. *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (citations omitted) ("[A]ny issue not raised in a statement of matters complained of on appeal is deemed waived.").[3]

Father's second and third issues are interrelated; therefore, we address them together. Father argues that the trial court erred by finding aggravated circumstances because he made a genuine effort to maintain a relationship with Child. Father's Brief at 12-14. Specifically, Father argues

---

[3] Even if Father had not waived this issue, he would not be entitled to relief. The Juvenile Act does not require that parents be provided with reasonable reunification efforts as a prerequisite for a finding of aggravated circumstances. 42 Pa.C.S. § 6302; 42 Pa.C.S. § 6341. Indeed, the primary purpose of an aggravated-circumstances finding is to relieve CYS of its normal obligation to provide those efforts. *In re L.V.*, 127 A.3d at 839.

that he attempted to obtain legal counsel in order to file for custody of Child and that he attempted to contact Mother regarding Child via text messages and Facebook, but she did not respond. *Id.*[4]

In its opinion, the trial court found that Father has not seen Child for at least one year and has made minimal efforts to contact Child. Trial Court Opinion, 11/8/16, at 9-11. The court emphasized that Father had an affirmative duty to maintain a relationship with Child, but, at best, Father acted passively by placing himself on a waitlist for legal counsel and by sending Mother Facebook messages. *Id.* The court explained that it found Father's insistence that he had been actively pursuing custody of Child disingenuous. *Id.* at 10. Thus, the court reasoned, Father failed to maintain substantial and continuing contact with Child pursuant to 42 Pa.C.S. § 6302. *Id.* at 11.

_____

[4] Father also argues in his third issue that the trial court interpreted the Juvenile Act incorrectly because, "[a]ccording to a strict reading of the statute, Father should have been given six months from the date of [*sic*] his identity and whereabouts were known and that he was given notification prior to the finding of aggravated circumstances." Father's Brief at 13. We disagree. The plain language of the definition of aggravated circumstances set forth in 42 Pa.C.S. § 6302 requires only that the court be aware of Father's identity, and that Father fail to maintain substantial and continuing contact with Child for six months. Nothing in the definition of aggravated circumstances suggests that it was intended to apply only if the court had been aware of Father's identity for six months, or only if Father failed to maintain contact with Child for six months after being notified that she was in foster care.

Our review of the record supports the trial court's conclusions. During the aggravated-circumstances hearing, CYS presented the testimony of caseworker, Amanda Sigrist. Ms. Sigrist testified that she spoke with Father for the first time on June 13, 2016. N.T., 7/22/16, at 7. Father initially claimed to Ms. Sigrist that he last saw Child "6 months ago." *Id.* at 8. However, Child would have already been in CYS custody at that time. *Id.* When pressed on this issue, Father claimed that he last saw Child in the Fall of 2014 at a Target. *Id.* Concerning his efforts at maintaining contact with Child, Father insisted that he was in the process of obtaining legal counsel so that he could file for custody. *Id.* at 9. Father further asserted that he had been sending Facebook messages to Mother every day. *Id.* at 7.

The trial court also heard testimony from Father. Father testified that he saw Child about "once or twice a week" for the first "couple months" of her life, until Mother moved into a homeless shelter. N.T., 7/22/16, at 20. Father then saw Child "approximately every other day[.]" *Id.* According to Father, he continued to see Child regularly until "about a year ago[.]" *Id.* Father explained, "I was texting her mother and she wasn't replying. I didn't know her mother's side of the family so I never did contact them." *Id.* Father claimed that he went to the courthouse in 2013, hoping to file for custody of Child, but he was informed he needed an attorney to file for custody. *Id.* at 21. Father asserted that he signed up for free legal counsel, but "I just got the letter because they said it was a 1 or 2 year waiting list."

*Id.* Father further claimed that he attempted to maintain contact with Child by sending Mother a Facebook message every day, but she stopped responding "awhile ago." *Id.* at 24, 30.

Thus, the record reveals that Father has repeatedly changed his story regarding when he most recently saw Child. Father initially informed Ms. Sigrist that he saw Child "6 months ago," then told her that he saw Child in the Fall of 2014. He then testified during the aggravated-circumstances hearing that he last saw Child about one year ago, which would have been in approximately July of 2015. Father's claims concerning his contact with Child have been inconsistent and implausible, and the trial court was well within its discretion to question the credibility of Father's testimony. Further, even accepting Father's testimony as true, we agree with the court that merely "signing up" for free legal counsel and sending Facebook messages are not sufficient to demonstrate that Father made sincere efforts to maintain substantial and continuing contact with Child.

Finally, Father argues in his fourth issue that the trial court erred by denying him visitation with Child. Father's Brief at 14-16. Father contends that he does not pose a threat of harm to Child, and that it is "hard to say" whether denying him visits with Child would be in Child's best interest, "without even attempting a meeting[.]" *Id.* at 15. We have stated:

> [I]n dependency cases such as this, the standard against which
> visitation is measured also depends upon the goal mandated in
> the family service plan. Where, as here, reunification still
> remains the goal of the family service plan, visitation will not be

denied or reduced unless it poses a grave threat. If, however, the goal is no longer reunification of the family, then visitation may be limited or denied if it is in the best interests of the child or children. The "best interests" standard, in this context, is less protective of parents' visitation rights than the "grave threat" standard.

*In re L.V.*, 127 A.3d at 839 (quoting *In re C.J.*, 729 A.2d 89, 95 (Pa. Super. 1999)).

In its opinion, the trial court explained that it denied Father visits with Child based on its conclusion that visits would pose a grave threat of harm. Trial Court Opinion, 11/8/16, at 15. The court noted that it should have applied a best-interest standard, rather than a grave-threat standard, because Child's permanency goal is adoption. *Id.* Nonetheless, the court concluded that denying visits was in Child's best interest. *Id.* The court underscored the testimony of Child's therapist, Ashten Trimble. *Id.* at 14-15.

Ms. Trimble testified during the aggravated circumstances hearing that she has been providing Child with play therapy for about one year. N.T., 7/22/16, at 41. Ms. Trimble explained that Child previously was visiting with Mother and that Child engaged in inappropriate behaviors during therapy while those visits were continuing. *Id.* These behaviors included wetting herself and engaging in "aggressive play." *Id.* Child's behaviors improved for about one month after Mother's parental rights were terminated in May of 2016. *Id.* at 42, 45. However, Ms. Trimble reported that Child's behaviors began to deteriorate once again after Child's foster parents

- 10 -

informed her that she may visit with Father. *Id.* 41-43. Ms. Trimble noted that Child "verbalizes fear and hesitation in meeting [Father]." *Id.* at 43. Child reported to Ms. Trimble that she has no recollection of Father and wants to stay with her foster parents. *Id.* at 44. Ms. Trimble opined that if Child visits with Father it likely will cause her to regress. *Id.* at 47. Ms. Trimble explained, "[Child] already has mass anxiety. So I believe that we will have to work on the anxiety and the fear and anger coming back as we did when she was seeing [Mother] in visits." *Id.*

We discern no abuse of discretion by the trial court. Our review of the record reveals that the trial court changed Child's permanency goal to adoption by order entered May 13, 2016. The court was therefore permitted to deny visits with Father if it determined that visits would be contrary to Child's best interest. Here, the record amply supports that determination, as the prospect of having to visit with Father has already caused Child considerable emotional distress. We agree with the court that Child should not be subjected to further trauma by being forced to visit with Father.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by finding aggravated circumstances with respect to Father and by denying visitation. We therefore affirm the trial court's August 18, 2016 and September 2, 2016 orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/3/2017